UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| TOWN OF SALISBURY, DAVID J. L'ESPERANCE, | ) | CIVIL ACTION |
| CORNELIUS J. HARRINGTON, KEVIN SULLIVAN, | ) | NO. 14-13726-JGD |
| ROBERT ST. PIERRE, DANIEL MCNEIL, | ) | |
| RICHARD MERRILL JR., EUGENE SCIONE, | ) | |
| STEVEN SFORZA, MICHAEL ADLER and | ) | |
| THOMAS FOWLER, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OF DECISION AND ORDER
## ON INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

September 28, 2015

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Mark Thomas, is a police officer with the Town of Salisbury.  He has

brought this action alleging numerous violations of his constitutional and state law rights in

connection with an internal investigation brought against him, his resulting termination as a

police officer, and his subsequent reinstatement.  This court has issued a Memorandum of

Decision and Order on the Motion to Dismiss filed by the Town of Salisbury and the Town

Manager, Cornelius (Neil) Harrington (the "Town Decision") (Docket No. 48).  This matter is

presently before the court on the Motion to Dismiss, brought pursuant to Fed. R. Civ. P.

12(b)(6), by police officers Richard Merrill, Jr., Eugene Scione, Steven Sforza and Michael Alder;

Robert St. Pierre (the former Chief of the Salem Police Department who conducted the investigation); and Thomas Fowler (the current Chief of the Salisbury Police Department) (collectively, the "Individual Defendants").  For the reasons detailed herein, and in the Town Decision, which is incorporated herein by reference, the Individual Defendants' Motion to Dismiss (Docket No. 23) is ALLOWED.  This court concludes that the plaintiff has failed to state a constitutional claim against any of the Individual Defendants, and declines to exercise supplemental jurisdiction over the state law claims.

## II.  <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).  Applying this principle, a synopsis of the facts as alleged against each of the Individual Defendants follows.  A more detailed summary of the facts can be found in the Town Decision.

### <u>Robert St. Pierre</u>

St. Pierre is the former Chief of the Salem Police Department, and was a long-time friend of the Town Manager, Neil Harrington.  (Compl. (Docket No. 1) ¶¶ 8, 101).  In or about December 2010, Harrington appointed St. Pierre to conduct an internal investigation of the then-Chief of Police, David L'Esperance.  (<u>Id.</u> ¶ 101).  Thomas alleges that the hiring of St. Pierre to conduct this investigation was improper for a number of reasons, including the fact that the Board of Selectmen had not given permission to conduct the investigation.  (<u>Id.</u> ¶¶ 101-09).  Moreover, the decision to proceed with St. Pierre was allegedly done so that Harrington would

be protected from exposure and could direct the investigation.  (Id. ¶ 105).  According to

Thomas, while L'Esperance was the focus of the investigation, the plaintiff, too, was a "target"

from the outset.  (Id. ¶¶ 122-27).  Thus, Thomas was instructed by St. Pierre to "bring a lawyer"

to his interview in connection with the L'Esperance investigation.  (Id. ¶¶ 124-26)

L'Esperance resigned on January 18, 2011 and Kevin Sullivan was appointed Acting

Chief.  (Id. nn.1 & 2, ¶ 88).  On January 24, 2011, St. Pierre issued a report (the "L'Esperance

Report"), which detailed serious violations of state law and the Police Department's Code of

Conduct on the part of L'Esperance.  (Id. n.3).  The L'Esperance Report also contained allega-

tions concerning Thomas, and Harrington independently authorized St. Pierre to begin a new

investigation of Thomas in late February 2011.  (Id.).

Thomas was placed on administrative leave on May 25, 2011.  (Id. n.8).  Thomas alleges

that because of jealousy and personal animosity, many SPD employees submitted false and

defamatory statements to St. Pierre about him.  (Id. ¶¶ 129-54).  St. Pierre was allegedly biased

against Thomas and would coach witnesses to provide negative information.  (Id.).  St. Pierre

allegedly kept Harrington "apprised of the investigation during its pendency."  (Id. ¶ 158).

On or about September 1, 2011, St. Pierre issued a report (the "Thomas Report"), which

was mailed to Thomas on September 28, 2011.  (Town Mem. (Docket No. 22) at 3; Compl.

¶ 155).  In the report, St. Pierre found that there were grounds to discharge Thomas, namely:

(1) that during the period October 1, 2007 through March 1, 2008, Thomas studied for the Bar

Exam while on duty as a police officer, and (2) that Thomas knowingly allowed "then-Chief

David L'Esperance to submit false information concerning [the plaintiff's] work history,

-3-

including but not limited to the position [he] held and as to disciplinary action that had been taken against [him,]" in order to gain admission to the FBI National Academy.  (Compl. Ex. 1 at 1).  Thomas contends that these charges are patently false.  A disciplinary hearing was held on February 1, 2012 before Harrington, at which time Thomas was represented by counsel.  (Compl. ¶ 157).  His employment with the SPD was terminated on February 8, 2012.  (Id. ¶ 160).  Thomas filed a grievance, which was denied, and then appealed to an arbitrator.  (Id. ¶¶ 162-64, 167).  After a hearing, on October 31, 2012, the arbitrator issued written findings, "which concluded that Thomas committed no wrongdoing, completely exonerating him."  (Id. ¶ 172).

Meanwhile, on or about February 23, 2011, Thomas had filed what he characterizes as a "whistle blowing" letter with the then-Chairman of the Board of Selectmen, Donald Beaulieu, and with Harrington.  (Id. ¶¶ 111-12).  Therein, Thomas alleged that Acting Chief of Police, Kevin Sullivan, had sexually harassed female dispatchers working with the Police Department.  (Id. ¶¶ 111-12, 114).  In response to Thomas' complaint, Harrington again hired St. Pierre who, in turn, hired Police Lt. Mary Butler of the Salem Police Department to assist in a new investigation.  (Id. ¶¶ 117-20).  Lt. Butler found the charges against Sullivan to be substantiated.  (Id. ¶¶ 119-20).  Sullivan resigned, or was relieved of his duties, on March 1, 2011.  (Id. n.4; Town Mem. at 3).  Defendant Richard Merrill was named Acting Chief (Compl. n.4), and Thomas Fowler was subsequently appointed Chief.  (Id. ¶ 180 & n.12).

### Richard Merrill, Jr.

As noted above, Richard Merrill, Jr. was named Acting Chief following Sullivan's departure from the SPD on or about March 1, 2011.  (Id. n.4; Town Mem. at 3).  Thomas has alleged

that previously, on or about September 24, 2010, Merrill and other police officers congratulated Thomas on his promotion to the rank of Sergeant, consistent with the fact that L'Esperance had told several officers that he was being promoted.  (Compl. ¶¶ 68-71). However, Thomas never received the promotion.  (Id. ¶ 72).

According to Thomas, Merrill knowingly provided false information about him to St. Pierre during the investigation of Thomas.  Specifically, Merrill reported that Thomas had told him, and L'Esperance had confirmed, that Thomas had studied for the Bar Exam while on duty during the period of September 2008 through December 2008.  (Id. ¶¶ 132-33).  The falsity of this statement, according to Thomas, is apparent from the fact that Thomas took and passed the Bar Exam in February 2008.  (Id. ¶ 134).[1]  According to Thomas, Merrill later admitted that Sullivan had made him make the report of Thomas' studying while on duty, and that the St. Pierre investigation was a set-up to get Thomas.  (Id. ¶¶ 135-36).

### Eugene Scione

Eugene Scione is a Sergeant in the SPD.  (Id. ¶ 11).  St. Pierre interviewed Scione on January 7, 2011 in connection with the L'Esperance investigation, and on March 21, 2011 in connection with the Thomas investigation.  (Id. ¶ 143).  On both occasions, Scione reported that Thomas had told him that he (Thomas) had seen L'Esperance steal property from an impounded vehicle, and that Thomas had paid or offered to pay the owner for the missing

---

[1]  The charge in the final Thomas Report was that the plaintiff studied for the Bar Exam on duty during the period October 1, 2007 through March 1, 2008.

items. (Id.). Thomas denies both ever having made such statements and the truth of the statements. (Id. ¶¶ 144-47).

Scione was also the president of the Police Supervisors' Union. (Id. ¶ 163). In that capacity, Scione apparently appropriately advised Thomas on how to arrange for the Union to file a grievance challenging his termination, after the Union initially refused to do so. (Id. ¶¶ 163-64).

### Steven Sforza

Steven Sforza is a Sergeant with the SPD. (Id. ¶ 12). Sforza was interviewed in connection with Thomas' efforts to become an FBI task force officer in 2010, as part of Thomas' background check. (Id. ¶ 64). Thomas passed the background check, and was informed by L'Esperance that his passing must mean that Sforza told the investigator that Thomas was trustworthy. (Id. ¶ 65). At some point, however, according to Thomas, Sforza became his adversary. (Id. ¶ 162). Sforza allegedly assisted Sullivan in wiretapping Thomas inside the police department offices. (Id. ¶ 89). Sforza was on the executive board of the Union, along with President Leavitt and Michael Alder. (Id. ¶ 162). When Thomas wanted the Union to file a grievance relating to his termination, he was told "that the executive board of the police union could not talk to Thomas nor file a grievance on his behalf." (Id.). This decision was rescinded after Thomas approached the Union's directors, and the grievance was filed. (Id. ¶¶ 162-64). Sforza was also allowed by Fowler to own and operate a firearm safety training company while Thomas' ability to practice law while serving as a police officer was curtailed by Fowler, as discussed below. (Id. ¶¶ 189-91).

### Michael Alder

Alder is a police officer with the SPD.  (Id. ¶ 13).  He was also an officer of the Union for many years.  (Id. ¶ 47).  Thomas alleges that he reported Alder to L'Esperance in connection with public interactions between Alder and his girlfriend, which Thomas felt were inappropriate and unprofessional.  (Id. ¶¶ 44-46, 48).  Thomas told Alder that he had reported him.  (Id. ¶¶ 45-46).  L'Esperance allegedly discussed the accusations with Harrington, who had told him to "let it go."  (Id. ¶ 49).  Thomas alleges that because he had reported Alder, Alder became his adversary, and was part of the Union executive board (along with Sforza) who initially refused to file Thomas' grievance.  (Id. ¶¶ 47, 162-64).

### Thomas Fowler

Thomas Fowler is the Chief of Police in the Town of Salisbury.  (Id. ¶ 14).  He was appointed after Merrill retired, on or about April 1, 2012.  (Id. n.12).  Thomas alleges that after his reinstatement on or about November 30, 2012, "Thomas became the target of numerous retaliatory acts orchestrated by Harrington and the new SPD police chief, Fowler."  (Id. ¶ 180). Thomas complained to Fowler about his treatment by other police officers premised, at least in part, on their concern that Thomas might involve them in legal action.  (Id. ¶¶ 181-82).  Fowler was aware of the officers' concerns, and asked Thomas whether he intended to file suit.  (Id. ¶¶ 182-84).  After Thomas confirmed that he did intend to file suit, Fowler allegedly told Thomas that he had unilaterally changed the SPD policy and/or rule regarding practicing law in order to establish a total ban on the practice of law.  (Id. ¶¶ 185-86).  Other officers with

different types of businesses, including Sforza as described above, were allowed to continue their businesses.  (Id. ¶¶ 187-91).

The defendants have submitted a copy of the Town's response to a grievance filed on behalf of Thomas relating to the alleged prohibition on the practice of law.  (Ind. Defs. Mem. (Docket No. 24) Ex. 3).  According to the policy described in that response, "Officers shall not engage in any compensated off-duty employment without the knowledge and approval of the Chief of Police . . . ."  (Id. at 2).  It is the Town's position that employment as an attorney is not *per se* prohibited, and that Thomas just needed approval.  (Ind. Defs. Mem. at 5 n.5).  However, Thomas has submitted an affidavit signed by Fowler, which was filed in a case in this court from which Thomas requested leave to withdraw as trial counsel.  (Docket No. 29-1).  Therein, Fowler attested that Rule 4:01 of the Salisbury Police Department Rules and Regulations provided as follows:

> Officers shall not be employed by or engaged in any business that involves the distribution or sale of alcoholic beverages, bail bonds services, investigative work for insurance companies, private guard services, collection agencies or attorneys.

(Id. (emphasis added)).

Additional facts will be provided below as appropriate.

### III.  ANALYSIS

#### A.  Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  Cooperman, 171 F.3d at 46.  Dismissal is only

appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief."

Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane." Garcia-Catalan v. United

States, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's

factual allegations (which must be accepted as true) from its conclusory legal allegations (which

need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

2012)). "Second, the court must determine whether the factual allegations are sufficient to

support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.

(quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted).

This second step requires the reviewing court to "draw on its judicial experience and common

sense." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to

remove the possibility of relief from the realm of mere conjecture, the complaint is open to

dismissal." Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir.

2010)).

Finally, in the usual course, "any consideration of documents not attached to the

complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is

properly converted into one for summary judgment under Rule 56." Watterson v. Page, 987

F.2d 1, 3 (1st Cir. 1993) (citing Fed. R. Civ. P. 12(b)(6)). "However, courts have made narrow

exceptions for documents the authenticity of which are not disputed by the parties; for official

public records; for documents central to plaintiffs' claim; or for documents sufficiently referred

to in the complaint." Id. The Town's response to Thomas' grievance concerning the limitation

on outside employment, and the affidavit of Fowler filed in other litigation, are such

documents, and will be considered by the court.

For the reasons detailed herein, the court finds that Thomas has failed to state a consti-

tutional claim against any of the Individual Defendants. The court declines to exercise supple-

mental jurisdiction over the state law claims. Therefore, the Individual Defendants' motion to

dismiss is ALLOWED.

### B. <u>Count I – Violation of First Amendment Rights – Retaliation</u>

Count I of the complaint is brought against the Town of Salisbury, Harrington and

Fowler. This court's ruling in connection with the claim against the Town and Harrington is

included in the Town Decision. With respect to Fowler, Thomas alleges as follows:

> 219.   Salisbury, by and through Fowler (an authorized decision maker for
> the municipality), violated Thomas' First Amendment rights when he
> retaliated against Thomas after Thomas informed Fowler that he
> intended to sue Salisbury and certain town employees for their illegal
> behavior, including the cover-up of the Sullivan assault.
>
> 220.   In retaliation for Thomas' disclosure of this matter of public
> concern, Fowler unilaterally ordered Thomas to cease the practice of law
> while still permitting other Salisbury police officers to continue to
> perform law enforcement related jobs outside their employ by Salisbury.
>
> 221.   As a result of Harrington's and Fowler's actions, and in violation of
> his First Amendment rights, Thomas has suffered a loss of reputation and
> earning capacity as well as suffering lost wages, emotional and physical
> pain and distress, and has incurred legal and medical costs. All such
> damages continue to this date.

(Compl. ¶¶ 219-221).  For the reasons detailed herein, these allegations are insufficient to state a First Amendment retaliation claim against the defendant Fowler.  Thomas' alleged statement, that he was intending to bring suit, does not constitute a statement of public concern made by a private citizen, and it is not entitled to constitutional protection.

### Thomas' Speech is Not Protected Under the First Amendment

"It is well settled that 'as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Mercado-Berrios v. Cancel-Alegria, 611 F.3d 18, 25-26 (1st Cir. 2010)) (additional citation omitted).  In the public employment context, however, this right is not unlimited.  As the Supreme Court explained in Garcetti v. Cellabos, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006), "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  This is because

> [g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services. Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions.

Garcetti, 547 U.S. at 418-19, 126 S. Ct. at 1958 (internal citation omitted).  Consequently, "a governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." Davignon v.

Hodgson, 524 F.3d 91, 100 (1st Cir. 2008) (quoting City of San Diego v. Roe, 543 U.S. 77, 80, 125

S. Ct. 521, 523, 160 L. Ed. 2d 410 (2004)) (alteration omitted).

In accordance with the guidance set forth by the Supreme Court, including the Court's

discussion in Garcetti, the First Circuit has established the following three-part test for

determining whether an adverse employment action violates a public employee's right of free

speech:

> First, a court must determine "'whether the employee spoke as a citizen
> on a matter of public concern.'"  *Curran v. Cousins*, 509 F.3d 36, 45 (1st
> Cir. 2007) (quoting *Garcetti*, 547 U.S. at 418, 126 S. Ct. 1951).  Second,
> the court must "balance ... the interests of the [employee], as a citizen, in
> commenting upon matters of public concern and the interest of the
> State, as an employer, in promoting the efficiency of the public services it
> performs through its employees."  *Id.* at 44 (quoting *Pickering v. Bd. of
> Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)) (omission
> in original).  Third, the employee must "show that the protected
> expression was a substantial or motivating factor in the adverse
> employment decision."  *Id.* at 45.

Decotiis, 635 F.3d at 29.  In the event all three elements of the test "are resolved in favor of the

plaintiff, the employer may still escape liability if it can show that 'it would have reached the

same decision even absent the protected conduct.'"  Id. at 29-30 (quoting Rodriguez-Garcia v.

Miranda-Marin, 610 F.3d 756, 765-66 (1st Cir. 2010)).

Recognizing that the facts are in dispute, for present purposes this court will assume,

*arguendo*, that Fowler absolutely prohibited Thomas from engaging in the practice of law, and

that this was an adverse employment decision.  Even under this view of the facts, Thomas'

claim against Fowler (and against the Town based on Fowler's conduct) must fail, because he

was not speaking out as a citizen on a matter of public concern.

In evaluating whether Thomas has stated a claim for violation of his First Amendment rights, "[t]he Court must first determine whether the speech touched upon a matter of public concern." Decotiis, 635 F.3d at 30. "Whether an employee's speech involves a 'matter of public concern' is a case-specific, fact-dependent inquiry." Curran v. Cousins, 509 F.3d 36, 46 (1st Cir. 2007). When the topic of the speech relates to a matter of "inherent public concern" such as "official malfeasance, abuse of office, and neglect of duties[,]" no further inquiry is required. Id. Otherwise, "the court must examine the form and context of the speech, with an eye to (1) whether the community has *in fact* manifested a legitimate concern in the subject, and (2) whether the employee's speech suggests a subjective intent to contribute to public discourse." McGunigle v. City of Quincy, 944 F. Supp. 2d 113, 121 (D. Mass. 2013) (punctuation omitted), and cases cited. Here, the conversation which Thomas contends is protected was a private conversation in which Thomas told Fowler that he was going to bring a lawsuit against the Town and various Town employees. This information, *i.e.*, that Thomas was intending to bring a lawsuit, is not a matter of public concern.[2]

In addition, Thomas was not speaking out as a private citizen at the time of his discussion with Fowler. Rather, he was responding to an inquiry by his superior officer, in a

---

[2] This court has found that Thomas' disclosure of Sullivan's alleged harassment of women was on a matter of public concern, and therefore has not dismissed Thomas' First Amendment claim against the Town and Harrington. But that is not the substance of Thomas' claim against Fowler. As alleged in the complaint, Fowler was concerned that Thomas was going to sue the Town and other employees, and Thomas told him that he was, in fact, going to bring such a suit. (Compl. ¶¶ 219-21). This is distinct from public discourse about Sullivan's conduct. In fact, Sullivan had already resigned from the police force by the time Fowler became Chief and his conversation with Thomas allegedly occurred.

conversation which took place in the workplace and which had no public component.  He did not make his statement to "channels available to citizens generally[,]" but, rather, just had a communication "up the chain of command at his workplace" concerning, at most, conditions at his place of employment.  See Weintraub v. Bd. of Educ. of N.Y., 593 F.3d 196, 204 (2d Cir. 2010) (teacher's filing of grievance challenging school administration's refusal to discipline a student was not protected; internal communication was not made as a private citizen).  Even assuming that Thomas' speech could be construed as involving a matter of public concern, it can only be viewed as having been undertaken in the course of performing his job and not as a private citizen.  See Perkins v. City of Attleboro, 969 F. Supp. 2d 158, 174 (D. Mass. 2013) (communication by Fire Captain to union official was not speech by a private citizen).  Thus Thomas' conversation with Fowler does not involve constitutionally protected speech.

In sum, the plaintiff has not stated a claim for retaliation in violation of his First Amendment rights against Fowler.  The motion to dismiss Count I of the complaint is allowed.

### C.      Count III – Violation of Fourteenth Amendment – Substantive Due Process

In Count III of his complaint, Thomas alleges that all of the defendants violated his substantive due process rights.  While the parties agree on the standard to be applied, they differ as to whether the allegations of the complaint are sufficient to establish the "conscience-shocking behavior" necessary to sustain such a claim.  See Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).  Thomas argues, as he did in opposition to the Town's motion to dismiss, that "the analysis into whether conduct is egregious or conscience shocking is extremely fact specific[,]" and that he "has sufficiently pled that a cabal of town officials, senior

department heads and police officers conspired to have him terminated." (Pl. Opp. (Docket No.

30) at 2). This court concludes, however, that Thomas has not pleaded sufficient facts to

support the very limited claim of a substantive due process violation, and Count III will be

dismissed.

> Substantive due process is a constitutional cause of action that leaves
> the door "slightly a jar for federal relief in truly horrendous situations."
> *Néstor Colón–Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st
> Cir. 1992). In order to assert a valid substantive due process claim, [the
> plaintiff has] to prove that [he] suffered the deprivation of an established
> life, liberty, or property interest, *and* that such deprivation occurred
> through governmental action that shocks the conscience. *Pagán v.
> Calderón,* 448 F.3d 16, 32 (1st Cir. 2006); *Rivera v. Rhode Island,* 402 F.3d
> 27, 33-34 (1st Cir. 2005).

Clark v. Boscher, 514 F.3d 107, 112-13 (1st Cir. 2008) (affirming dismissal of complaint under

Fed. R. Civ. P. 12(b)(6)). Although "the 'shock the conscience' standard is imprecise," it is

"readily apparent that negligent conduct, simpliciter, is categorically insufficient to shock the

conscience." DePoutot v. Raffaelly, 424 F.3d 112, 118-19 (1st Cir. 2005) (citation omitted).

Rather, behavior "that sinks to the depths of shocking the contemporary conscience is much

more likely to find its roots in 'conduct intended to injure in some way unjustifiable by any

government interest.'" Id. at 119 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118

S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). Thus, "[a]lthough there is no 'scientifically precise

formula,' to determine what may 'shock the conscience' and trigger the protections of the

substantive due process clause of the Fourteenth Amendment, the executive action must be

> truly outrageous, uncivilized, and intolerable [and] the requisite
> arbitrariness and caprice must be stunning .... Indeed, [a] hallmark of
> successful challenges is an extreme lack of proportionality, as the test is
> primarily concerned with violations of personal rights so severe[,] so

> disproportionate to the need presented, and so inspired by malice or
> sadism rather than a merely careless or unwise excess of zeal that it
> amounted to a brutal and inhumane abuse of official power literally
> shocking to the conscience."

Correia v. Town of Framingham, 969 F. Supp. 2d 89, 95-96 (D. Mass. 2013) (quoting Harron v.

Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011)).

In the instant case, the crux of Thomas' complaint is that the Individual Defendants

collectively participated in an unfair investigation that resulted in his termination, which was

reversed through the prescribed appellate process, and that the Union initially refused to file a

grievance on his behalf before promptly reversing its decision.  He has cited no cases, and none

have been found, where such conduct, even if motivated by bad faith, supports a substantive

due process violation.  Rather, his claims of perjury and retaliatory action are generally recog-

nized as being insufficient to state a claim.  See Frei v. Town of Holland, 212 F. App'x 4, 6,

No. 06-1523, 2007 WL 29702, at *1 (1st Cir. Jan. 5, 2007) ("The substantive due process claim

based on allegations of perjury, falsification of documents, and retaliatory action, fails under

this circuit's case law."), and cases cited.

Specifically, a most liberal reading of the complaint in Thomas' favor establishes that St.

Pierre is accused of believing untrue testimony about Thomas, encouraging negative testimony

against Thomas, and displaying bias against Thomas.  It also establishes that Merrill and Scione

are accused of providing false testimony relating to (hearsay) statements that Thomas had

purportedly made.  However, Thomas had the opportunity to dispute these witnesses'

assertions through his own testimony.[3]  Sforza and Alder are accused only of refusing to file a

grievance on Thomas' behalf, a situation that was promptly rectified by a few phone calls.  As

the court held in <u>Riley v. Colantuono</u>, No. 12-CV-175 MML, 2012 WL 2195024, at *3 (D.N.H.

June 13, 2012),[4] in connection with the dismissal of a substantive due process claim alleging

that a civil forfeiture proceeding was premised and pursued on the basis of fraudulent affidavits

and testimony, these allegations do not "rise to the level required to support a substantive due

process claim."  A review of the cases cited and described by the <u>Riley</u> court compels the same

result in the instant case.  <u>Id.</u> (citing <u>McConkie v. Nichols</u>, 446 F.3d 258, 261 (1st Cir. 2006) "('lies

alone are not necessarily considered conscience-shocking'); *Cruz–Erazo v. Rivera–Montañez*,

212 F.3d 617, 623–24 (1st Cir.2000) (rejecting substantive due process claim based on police

officers' provision of false affidavits and testimony to support a trumped-up burglary charge);

*id.* at 618 ('Although we find appellees' alleged conduct disgraceful, it does not sufficiently

'shock the conscience' so as to state a claim under § 1983.'); *cf. Castellano v. Fragozo*, 352 F.3d

939, 967 (5th Cir.2003) (noting that 'the Supreme Court has only characterized the type of

conduct [plaintiff] alleges – fabricated evidence and perjured testimony – as violative of

procedural, *not substantive*, due process'))."  <u>See</u> <u>also</u> cases discussed in Town Decision.

Finally, with respect to Fowler, the Individual Defendants contend that Thomas is pur-

suing arbitration against Fowler relating to the limits he imposed regarding extra-department

---

[3]  This court will not address the defendants' passing claim that most of the statements on which
Thomas' claim is based are time-barred.

[4]  <u>Report</u> <u>and</u> <u>Recommendation</u> <u>adopted</u>, No. CA-12-175-ML, 2012 WL 3061601 (D.N.H. July 26, 2012).

employment. (Ind. Defs. Mem. at 6). Thomas does not dispute this assertion. These allega-

tions, which also form the basis of Thomas' constitutional claim, do not rise to the level of a

substantive due process violation. Moreover, the matter is more appropriately addressed, at

least initially, in arbitration, where the scope of the alleged prohibition imposed by Fowler and

the contractual authority of the Chief to impose such limitations on employment will be

defined. For all these reasons, Count III against the Individual Defendants will be dismissed.

### D.    Count IV – Violation of Fourteenth Amendment – Defamation

In Count IV of the complaint, Thomas alleges as follows:

> 235.    Salisbury, by and through Harrington (an authorized decision
> maker for the municipality), and L'Esperance, St. Pierre, Sullivan, Merrill,
> Sforza, Alder, Scione and McNeil have caused Thomas to be defamed and
> his reputation irreparably damaged through numerous false statements
> concerning Thomas made to St. Pierre during his investigation.

> 236.    St. Pierre's coaching of certain witnesses in order to elicit false
> statements and his utterance of false statements during and after the
> investigation have caused Thomas to be defamed and his reputation
> irreparably damaged.

> 237.    As a result of the conduct of the defendants, Thomas' Fourteenth
> Amendment rights have been violated and his reputation has been
> severely damaged and a stigma has now been imposed that will interfere
> with his ability to take advantage of future employment opportunities.
> Thomas has suffered a loss of liberty interest in his reputation and a
> property interest in his loss of employment as a direct result of the false
> allegations advanced against him by the defendants. Thomas has further
> suffered a loss of wages, benefits, reputation and earning capacity as well
> as suffering emotional and physical pain and distress, and has incurred
> legal and medical costs. All such damages continue to this date.

(Compl. ¶¶ 235-37).

This Count was addressed on behalf of all the affected defendants in connection with the Town Defendants' motion to dismiss, and for the reasons detailed more fully in the Town Decision, this Count fails to state a constitutional violation.  "The cases make clear that, when a constitutionally protected interest in reputation is at stake, the Fourteenth Amendment requires a proceeding at which plaintiff has an opportunity to clear his name."  Beitzell v. Jeffrey, 643 F.2d 870, 879 (1st Cir. 1981), and cases cited.  "For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707, 33 L. Ed. 2d 548 (1972) (punctuation and quotation omitted).  In the instant case, Thomas "received the process that was his due."  Beitzell, 643 F.2d at 879.  Count IV fails to state a claim and will be dismissed.

### E.   Supplemental Jurisdiction

Thomas has alleged a number of state law claims against the Individual Defendants, and they have moved that the state law claims be dismissed for failure to state a claim.  Because this court declines to exercise supplemental jurisdiction over these claims, the sufficiency of Thomas' state law pleadings will not be addressed.

"A federal court exercising original jurisdiction over federal claims also has 'supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'"  Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (quoting 28 U.S.C.A. § 1367(a)).  "If, however, the court dismisses the foundational federal claims, it

must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." Id.  Those considerations include "the interests of fairness, judicial economy, convenience, and comity." Id.  Because "[c]omity is a particularly important concern in these cases[,] . . . the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Id.

Consideration of the relevant factors compels the conclusion that this court decline to exercise jurisdiction over Thomas' state law claims.  Because this case is at an early stage, the need to litigate the case in the state court would cause no undue delay or duplicative effort, and would not result in prejudice to either party.  See id. (finding that parties would not be prejudiced by remand of the state law claims to state court where "the court dismissed the only federal claims well before trial"); Perkins, 969 F. Supp. 2d at 183 (declining to exercise supplemental jurisdiction over state law claims where "the litigation has not proceeded to a stage where litigating the matter in state court would cause undue delay or duplicative effort" (quotations and citation omitted)).  The claims against the Individual Defendants would greatly expand the scope of the litigation appropriately pending in this court as they involve a number of additional defendants as well as numerous factual allegations which would have to be explored in discovery.  Finally, the First Circuit has emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Camelio, 137 F.3d at 672 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d

218 (1966)).  Therefore, the most appropriate course of action in this case is to dismiss the state law claims without prejudice to the plaintiff's right to raise them again in an appropriate forum.

### IV.  CONCLUSION

For the reasons detailed herein, the Individual Defendants' Motion to Dismiss (Docket No. 23) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge