UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| TOWN OF SALISBURY, DAVID J. L'ESPERANCE, ) | CIVIL ACTION |
| CORNELIUS J. HARRINGTON, KEVIN SULLIVAN, ) | NO. 14-13726-JGD |
| ROBERT ST. PIERRE, DANIEL MCNEIL, ) | |
| RICHARD MERRILL JR., EUGENE SCIONE, ) | |
| STEVEN SFORZA, MICHAEL ADLER and ) | |
| THOMAS FOWLER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON L'ESPERANCE DEFENDANTS' MOTION TO DISMISS

September 28, 2015

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff, Mark Thomas, is a police officer with the Town of Salisbury. He has brought this action alleging numerous violations of his constitutional and state law rights in connection with an internal investigation brought against him, his resulting termination as a police officer, and his subsequent reinstatement. This court has issued a Memorandum of Decision and Order on the Motions to Dismiss filed by the Town Defendants[1] (the "Town

---

[1] The Town Defendants consist of the Town of Salisbury and the Town Manager Cornelius (Neil) Harrington.

Decision") (Docket No. 48) and by the Individual Defendants[2] ("Ind. Decision") (Docket No. 49). This matter is presently before the court on the Motion to Dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), by former Chief of Police David J. L'Esperance, former Chief of Police Kevin Sullivan, and retired Sergeant Daniel McNeil (the "L'Esperance Defendants") (Docket No. 25). For the reasons detailed herein, and in the other Memoranda of Decisions, which are incorporated herein by reference, the L'Esperance Defendants' Motion to Dismiss (Docket No. 25) is ALLOWED. This court concludes that the plaintiff has failed to state a constitutional claim against any of these Defendants, and declines to exercise supplemental jurisdiction over the state law claims.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999). Applying this principle, the facts are detailed more fully in the Memoranda of Decision issued with respect to the Town Defendants and the Individual Defendants. What follows is a synopsis of the facts as alleged against each of the L'Esperance Defendants.

---

[2] The Individual Defendants include police officers Richard Merrill, Jr., Eugene Scione, Steven Sforza and Michael Alder; Robert St. Pierre (the former Chief of the Salem Police Department who conducted the investigation); and Thomas Fowler (the current Chief of the Salisbury Police Department).

**David J. L'Esperance**

David J. L'Esperance was the Chief of Police in the Salisbury Police Department from 2006 until he was placed on administrative leave on or about December 5, 2010. (Compl. ¶¶ 5, 33). L'Esperance was the choice of the Town Manager, Neil Harrington, who disregarded the input of a "select committee" in choosing L'Esperance. (Id. ¶¶ 30-33). Thomas worked successfully with L'Esperance for a number of years, and L'Esperance relied on him extensively. (See Id. ¶¶ 19, 24-28). Thomas was L'Esperance's "go-to-guy" and, at L'Esperance's request, provided the Chief with his "professional opinion" regarding other officers. (Id. ¶¶ 37, 40-42). Thomas also reported other officers' misconduct to L'Esperance. (Id. ¶¶ 43-52). As a result, there was "jealousy" and "great resentment toward [Thomas] within the rank and file of the SPD." (E.g., id. ¶¶ 43, 51). Thomas was called upon on a number of occasions to defend himself against baseless accusations. (E.g., id. ¶¶ 53-59).

In or about mid-2010, L'Esperance told Thomas that he had been cleared to be promoted to the rank of Acting-Sergeant. (Id. ¶ 61). L'Esperance told other officers about Thomas' imminent promotion as well (although it was supposed to be a secret), but the promotion never happened. (Id. ¶¶ 68-72).

From the commencement of his tenure as Police Chief, there were a number of complaints about L'Esperance made to the Town's Board of Selectmen. (Id. ¶¶ 78-80). The Union passed a "vote of no confidence" against L'Esperance on February 4, 2009. (Id. ¶ 81). When L'Esperance learned that Thomas had not supported him, he became very upset and

thereafter "treated Thomas as an outcast." (Id. ¶¶ 84-86). In addition, L'Esperance decided not to promote Thomas to Acting-Sergeant. (Id. ¶ 87).

Beginning in September 2010, allegations arose that L'Esperance was engaged in illegal activity. (Id. ¶ 88). Due to these allegations, L'Esperance was placed on paid administrative leave on December 5, 2010. (Id. n.2). Sullivan became acting Chief. (Id. n.2 & ¶ 88). L'Esperance resigned on or about January 18, 2011. (Id. n.1).[3] There are no allegations that L'Esperance was involved with the Police Department thereafter.

In or about December 2010, Harrington had appointed St. Pierre to conduct an internal investigation of L'Esperance. (Id. ¶ 101). Thomas alleges that he was also an unnamed "target" of the L'Esperance investigation. (Id. ¶ 127). While Thomas alleges a number of problems with the investigation, they are not attributed to L'Esperance. On January 24, 2011, St. Pierre issued a report (the "L'Esperance Report"), which detailed serious violations of state law and the Police Department's Code of Conduct on the part of L'Esperance. (Id. n.3). The L'Esperance Report also contained allegations concerning Thomas, which Thomas contends were fabricated. (Id.). Harrington independently authorized St. Pierre to begin a new investigation of Thomas in

---

[3] In the complaint, Thomas alternatively gives the date of L'Esperance's resignation as January 18, 2011 and March 2011. (Compl. ¶¶ 5, 98 & n.1). It is undisputed that L'Esperance went out on administrative leave on December 5, 2010. (Id. n.2). Since, as detailed herein, a report detailing L'Esperance's illegal behavior was issued on January 24, 2011 (id. n.3), it is more likely that he resigned in January. Moreover, Thomas has alleged that L'Esperance's successor, Sullivan, was relieved of his duties on March 1, 2011. (Id. n.4; see also Town Mem. (Docket No. 22) at 3). However, this issue does not need to be resolved herein.

late February 2011.  (Id.). Thomas was placed on administrative leave on May 25, 2011 while the investigation into the allegations against him was underway.  (Id. n.8).

### Kevin Sullivan

As noted above, Sullivan replaced L'Esperance as the Chief of Police once L'Esperance was placed on  administrative leave.  (Id. n.2).  Even prior to that time, however, Thomas and Sullivan had had an adversarial relationship, and Thomas had reported to L'Esperance that "Sullivan was the most unreliable officer in Salisbury and that Sullivan had a history of defaming his fellow officers, which Thomas had directly experienced."  (Id. ¶ 50).  According to the plaintiff, Sullivan was constantly attacking Thomas, and Thomas was repeatedly forced to defend his credibility against baseless attacks by Sullivan.  (Id. ¶¶ 51-60).

In December 2010, at or around the time that L'Esperance went out on leave and Sullivan took over as Chief, Sullivan ordered Thomas to drive a Police Department vehicle back from Thomas' graduation from a three month course at the FBI Academy (although he had taken the car with L'Esperance's permission), and ordered him to forego his flight home with his family.  (Id. ¶¶ 73-77).  While L'Esperance was under investigation, Sullivan also made allegations against Thomas in an effort to get him removed from the detectives' unit, including charges that he had not reported his correct address to the SPD.  (Id. ¶  91).  Sullivan allegedly ordered illegal wiretapping of Thomas within the Department, and participated in early morning stakeouts of Thomas' residence.  (Id. ¶¶  89-91).  As a result of Sullivan's false accusations, Thomas was removed from the detectives' unit.  (Id. ¶  92).  Although he was subsequently exonerated, Thomas was never restored to his position as a detective.  (Id.

¶¶ 94-95). This resulted in a loss of prestige as well as a loss of pay and benefits. (Id. ¶ 96). Allegedly, Sullivan and others continued to attack Thomas on a daily basis, trying to ruin his reputation. (Id. ¶ 99).

Thomas alleges that "[i]n or about January 22, 2011 Thomas was given disturbing information from SPD officers that Sullivan had sexually harassed female dispatchers working at the SPD." (Id. ¶ 111). On or about February 23, 2011, Thomas filed a "whistle blowing" report detailing the allegations against Sullivan with then-Chairman of the Board of Selectmen Donald Beaulieu and with Harrington. (Id. ¶ 112). Harrington then hired St. Pierre to conduct an investigation of Sullivan. (Id. ¶ 117, n.3). Accordingly, St. Pierre was responsible for investigating both Sullivan and Thomas.

Thomas alleges that some officers interviewed in connection with his investigation lied, and that at least one did so under pressure by Sullivan. (See id. at ¶¶ 130-36). St. Pierre issued his Report in connection with his investigation of Thomas on or about September 1, 2011, while Thomas remained out on administrative leave. (Id. ¶ 128; Town Mem. at 3; see also Compl. n.8). His employment with Salisbury was terminated on February 8, 2012. (Compl. ¶ 160). After a grievance proceeding, and several days of arbitration hearings, the arbitrator issued his written findings on October 31, 2012 exonerating Thomas and ordering him reinstated with full backpay. (Id. ¶¶ 167-68, 172-73).

Meanwhile, as noted above, in response to Thomas' complaint, Harrington hired St. Pierre to investigate Sullivan. St. Pierre, in turn, hired Police Lt. Mary Butler of the Salem Police Department to assist in the investigation. (Id. ¶ 118). Lt. Butler found the charges against

-6-

Sullivan to be substantiated. (Id. ¶¶ 119-20). Sullivan resigned, or was relieved of his duties, on March 1, 2011. (Id. n.4; Town Mem. at 3). Defendant Richard Merrill was then named Acting Chief (Compl. n.4). After Merrill retired, defendant Thomas Fowler was appointed Chief on or about April 1, 2012. (Id. n.12). There are no allegations that Sullivan continued to be involved with the SPD, or with the investigation of Thomas after his departure from the Department.

### Daniel McNeil

At all relevant times, Daniel McNeil was a Sergeant with the SPD. (Id. ¶ 9). Thomas alleges that shortly after he filed his whistle blower report about Sullivan's conduct, in February 2011, "McNeil told Thomas that he had informed Harrington about the Sullivan sexual harassment incidents long before Thomas reported it[,]" and McNeil had "encouraged Harrington to cover it up, as Salisbury could not handle another scandal like the one that the L'Esperance Report had engendered." (Id. ¶ 115). McNeil also allegedly told Thomas that Harrington and McNeil had discussed suppressing the evidence of harassment. (Id. ¶ 116). Thomas alleges that as an award for his cooperation, "McNeil was subsequently promoted to Sergeant by Harrington, a position that Thomas was already slated for." (Id.).

Thomas alleges further that McNeil lied during the L'Esperance investigation when he was interviewed on January 10, 2011, and reported that "Thomas had told him that L'Esperance stole property from an impounded vehicle" and "that Thomas told him that he paid or offered the owner cash to cover the cost of the missing items." (Id. ¶ 137). McNeil allegedly repeated the substance of these comments when he was interviewed again on March 9, 2011 in connection with the Thomas investigation, although in the latter interview he "stated that he had

doubts now as to whether Thomas stated he was actually there when L'Esperance took the property from the impounded vehicle." (Id. ¶ 138). Thomas denies making the statements or the substance of the statements. (Id. ¶¶ 139-42).

Additional facts will be provided below as appropriate.

### III.  ANALYSIS

#### A.  Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane." Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted). This second step requires the reviewing court to "draw on its judicial experience and common sense." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

For the reasons detailed herein, the court finds that Thomas has failed to state a constitutional claim against any of the L'Esperance Defendants.  The court declines to exercise supplemental jurisdiction over the state law claims.  Therefore, the L'Esperance Defendants' motion to dismiss is ALLOWED.

### B.  Statute of Limitations

The L'Esperance Defendants contend that the constitutional and state law claims against them should be dismissed because they are barred by the applicable three-year statute of limitations.  This court will only address the constitutional claims herein.  It is undisputed that such claims are governed by the Massachusetts three year statute of limitations.  Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (forum state's personal injury statute of limitations governs constitutional claims).  Federal law, however, controls when the statute of limitations accrues.  Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007).  It is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.'"  Id. (quoting Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S. Ct. 473, 549, 139 L. Ed. 2d 553 (1997)) (additional citations omitted).  This, in turn, occurs, when "the plaintiff can file suit and obtain relief."  Wallace, 549 U.S. at 388, 127 S. Ct. at 1095 (quotation omitted).

In the instant case, Thomas contends that the complaint filed on September 29, 2014 is timely because "Plaintiff's retaliatory termination . . . is the actual injury on which Plaintiff's claim rests[,]" and that did not take place until February 2012. (Pl. Opp. (Docket No. 32) at 7-8 (loss of Thomas' employment with SPD triggers constitutional claims)). He argues, without specificity, that "Thomas has asserted ample facts that L'Esperance, Sullivan, McNeil and for that matter, all the defendants, through their actions and particularly their statements, directly caused the loss of his constitutionally protected right[,]" that is to say his loss of employment. (Id. at 8). In light of the allegations that Sullivan and McNeil participated in the investigation (or caused others to participate in the investigation) that resulted in Thomas' termination, this court agrees that further development of the record would be appropriate to determine whether the claims against those defendants are timely. However, with respect to L'Esperance, there are no allegations that he in any way participated in the events leading up to the termination of Thomas' employment. Moreover, there are no allegations that he had any involvement with SPD affairs after he was placed on administrative leave on December 5, 2010. Even assuming that L'Esperance continued to be involved in some way until his formal resignation, and assuming that his resignation took place as late as March 2011, the claims against him are still time barred since the complaint was not filed until September 29, 2014. Therefore, the constitutional claims against L'Esperance (Counts III and IV) must be dismissed.

    C.    **<u>Count III – Violation of Fourteenth Amendment – Substantive Due Process</u>**

In Count III of his complaint, Thomas alleges that all of the defendants violated his substantive due process rights. While the parties agree on the standard to be applied, they

differ as to whether the allegations of the complaint are sufficient to establish the "conscience-shocking behavior" necessary to sustain such a claim.  See Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).  Thomas argues, as he did in opposition to the other motions to dismiss, that the analysis is fact specific, and that he "has sufficiently pled that a cabal of town officials, senior department heads and police officers conspired to have him terminated."  (Pl. Opp. (Docket No. 32) at 4).  This court concludes, however, that Thomas has not pleaded sufficient facts to support the very limited claim of a substantive due process violation, and Count III will be dismissed.

> Substantive due process is a constitutional cause of action that leaves the door "slightly a jar for federal relief in truly horrendous situations." *Néstor Colón–Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir. 1992).  In order to assert a valid substantive due process claim, [the plaintiff has] to prove that [he] suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience.  *Pagán v. Calderón,* 448 F.3d 16, 32 (1st Cir. 2006); *Rivera v. Rhode Island,* 402 F.3d 27, 33–34 (1st Cir. 2005).

Clark v. Boscher, 514 F.3d 107, 112-13 (1st Cir. 2008) (affirming dismissal of complaint under Fed. R. Civ. P. 12(b)(6)).  Although "the 'shock the conscience' standard is imprecise," it is "readily apparent that negligent conduct, simpliciter, is categorically insufficient to shock the conscience."  DePoutot v. Raffaelly, 424 F.3d 112, 118-19 (1st Cir. 2005) (citation omitted).  Rather, behavior "that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in 'conduct intended to injure in some way unjustifiable by any government interest.'"  Id. at 119 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)).  Thus, "[a]lthough there is no 'scientifically precise

formula,' to determine what may 'shock the conscience' and trigger the protections of the substantive due process clause of the Fourteenth Amendment, the executive action must be

> truly outrageous, uncivilized, and intolerable [and] the requisite arbitrariness and caprice must be stunning .... Indeed, [a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

Correia v. Town of Framingham, 969 F. Supp. 2d 89, 95-96 (D. Mass. 2013) (quoting Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011)).

In the instant case, in addition to being time-barred, the crux of Thomas' claims against L'Esperance is that L'Esperance was very upset when Thomas failed to support him in the no-confidence vote, and then failed to promote him to Acting-Sergeant. This does not rise to the level of conscience-shocking behavior.

With respect to Sullivan, Thomas does allege that Sullivan made his life miserable, and made false charges against him that Thomas had to constantly rebut. Regardless whether such harassment rises to the level of a constitutional violation, it does not form the basis of Thomas' constitutional claim. As noted above, Thomas' substantive due process claim is based on his wrongful termination. The complaint establishes however, that Sullivan had virtually no involvement in the events leading up to Thomas' termination, and was gone from the SPD by March 1, 2011, shortly after the investigation started. In fact, the crux of the complaint is that Thomas's employment was terminated as retaliation for his reporting Sullivan's misconduct — misconduct which led to Sullivan's immediate suspension.

A most liberal reading of the complaint is that Sullivan pressured at least one other police officer to lie about Thomas in connection with St. Pierre's investigation of Thomas. Similarly, at most, the claim against McNeil is that he lied to St. Pierre when he reported what Thomas had allegedly told him. For the reasons detailed more fully in the Decision relating to the Individual Defendants, this "substantive due process claim based on allegations of perjury . . . fails under this circuit's case law." Frei v. Town of Holland, 212 F. App'x 4, 6, No. 06-1523, 2007 WL 29702, at *1 (1st Cir. Jan. 5, 2007), and cases cited. See also Riley v. Colantuono, No. 12-CV-175 MML, 2012 WL 2195024, at *3 (D.N.H. June 13, 2012),[4] and cases cited. As detailed more fully in the Town Decision, the conduct on which Thomas bases his claims against these defendants is far less egregious than cases in which a substantive due process violation has been found. For all these reasons, Count III against the L'Esperance Defendants will be dismissed.

### D.     Count IV – Violation of Fourteenth Amendment – Defamation

This Count is addressed on behalf of all the affected defendants in connection with the Town Defendants' Motion to Dismiss. For the reasons detailed more fully in the Town Decision, this Count fails to state a constitutional violation since Thomas "received the process that was his due." Beitzell v. Jeffrey, 643 F.2d 870, 879 (1st Cir. 1981), and cases cited. Count IV fails to state a claim and will be dismissed.

---

[4] Report and Recommendation adopted, No. CA-12-175-ML, 2012 WL 3061601 (D.N.H. July 26, 2012).

### E. Supplemental Jurisdiction

Thomas has alleged a number of state law claims against the L' Esperance Defendants, and the defendants have moved that the state claims be dismissed for failure to state a claim. Because this court declines to exercise supplemental jurisdiction over these claims, the sufficiency of Thomas' state law pleadings will not be addressed.

As detailed more fully in the Individual Defendants' Decision, when a court dismisses all federal claims it must reassess its jurisdiction over the state law claims, "this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). Because this case is at an early stage, the need to litigate the case in the state court would cause no undue delay or duplicative effort, and would not result in prejudice to either party. This is especially true since the claims against the L'Esperance Defendants are distinct, and raise different factual and legal issues than those claims remaining in this court. Therefore, the most appropriate course of action in this case is to dismiss the state law claims without prejudice to the plaintiff's right to raise them again in an appropriate forum.

### IV. CONCLUSION

For the reasons detailed herein, the L'Esperance Defendants' Motion to Dismiss (Docket No. 25) is ALLOWED.

/ s / Judith Gail Dein  
Judith Gail Dein  
United States Magistrate Judge